**SUCZEK v. GENERAL MOTORS COR-
PORATION.**

**No. 9005.**

Circuit Court of Appeals, Sixth Circuit.

Dec. 16, 1942.

Francis D. Hardesty and George Rex Frye, both of Detroit, Mich. (Swan, Frye & Hardesty, George Rex Frye, Francis D. Hardesty, and John C. L. Cowen, all of Detroit, Mich., on the brief), for appellant.

Drury W. Cooper and Drury W. Cooper, Jr., both of New York City (Drury W. Cooper and Drury W. Cooper, Jr., both of New York City, and Fred E. Jones, of Detroit, Mich., on the brief), for appellee.

Before HICKS, HAMILTON and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

Robert Suczek has appealed from a decree of the district court dismissing his suit against General Motors Corporation for alleged infringement of Patent No. 1970823, issued to him on August 21, 1934, by the United States Patent Office.

The patent in suit pertains to vehicle wheel suspension and springing, and falls within the field of endeavor, repeatedly attempted, to improve the riding qualities of the modern automobile. In earlier days, manufacturers generally attached the wheels of automobiles to rigid axles. This arrangement proved unsatisfactory. Automobile riders received too many bumps and jolts. When, for instance, the right front wheel of the automobile struck a bulge, or bump, in the road, the wheel was forced upward carrying with it the entire right side of the car, and the left front wheel, moving in correlation, was tilted outward from the top with resultant increase in swaying motion. A further disadvantage was encountered in that the wheel movement, being a circular arc movement and not a straight line motion, tended to cause friction between the tire and the road.

Rigid axle attachment was superseded by independent wheel suspension, popularly termed "knee action," long prior to the issuance of the patent in suit. Each wheel was caused to move independently of its opposite wheel and, in so far as practicable, of the body of the car. [Goodwin, No. 1171942 (1916); Masury, No. 1735404 (1929); Pilblad, No. 1723251 (1929).] Moreover, the movement of the wheel was confined to a straight line motion. [Holle, No. 1529182 (1925); Ascarelli, No. 1694305 (1928); Ballot, No. 1687191 (1928).]

The Suczek Patent, in suit, is concerned with the improvement of "knee action" and reveals "an independently sprung vehicle wheel suspension" in which the entire wheel is designed to move in a straight line, parallel to the vertical axis of the car. The patent discloses two double armed levers, or wishbones, connected to the king pin, one above and the other below the center of the wheel. The other ends of each lever are attached, through the medium of a crank, to a spring, one arm of each lever extending transversely to the frame, the other laterally to the frame. At an intermediate point, these arms are suspended

on the frame of the car. Between the suspension or fulcrum points, there exists an axis of rotation of the lever. This axis of rotation is located at an acute angle to the longitudinal center line of the car.

The specifications assert that by proportioning the length of the lever arms and the crank "in a simple mathematical relation" it is possible to obtain a substantially straight line motion of that point to which the wheel is attached. The inventor specifies that the wheel will thus be forced to move in a line perpendicular to the vehicle body without "performing any swinging motion."

The Suczek Patent in suit embraces 34 claims, of which only Claims 25 to 32, inclusive, are in issue. Claim 27 has been presented by attorneys for the opposing parties as typical; and if appellant fails to establish this claim, he cannot prevail upon the other claims in suit. Claim 27 reads thus: "In an independently sprung vehicle wheel suspension, the vehicle having a frame and/or body structure and a wheel structure, the suspension comprising a lever whose fulcrum is suspended from or supported by the vehicle body or frame structure, means to hingeably attach the wheel structure to the lever, elastic means acting through said lever to resiliently support the vehicle weight on the wheel, an arm pivotally suspended from or supported by the vehicle body or frame structure, and hingeably attached to the wheel structure for guiding a point of the wheel in collaboration with the lever, on a substantially straight line when the wheel is displaced relative to the vehicle body and *means to locate the fulcrum axis of the lever and the pivot axis of the arm at acute angles to the longitudinal vertical center plane of the vehicle.*"

The above italicized language of Claim 27 has been so indicated, for the reason that it is conceded by appellant that all elements set forth in the typical claim, except the means disclosed by Suczek for locating the axes at an angle, have been revealed in the prior art. The evidence adduced upon the trial was of such character as to exact this concession.

Appellant contends that his invention consists in his arrangement of the fulcrum axis, or axis of rotation, of the levers at an acute angle to the longitudinal center line of the car. The underlying principle is dispersion of force. Illustratively, when an automobile strikes a bulge or bump

on the highway, the resultant force is directed vertically upward. Maximum lifting of the automobile from such vertical force results when the lever is at right angles to the center line of the car; or, in other words, when the axis of rotation of the lever is parallel to such center line. The effect of turning the axis of rotation to an angle causes the dispersion of a portion of the vertical force. Less swaying of the car naturally ensues from the application of diminished vertically directed upward force.

As a matter of fact, the sway reduction obtained by Suczek, as demonstrated by experimental tests made in open court, was, in the language of the district judge, "very small, amounting to only about one-eighth inch of side sway at the eye level of an occupant of the car." Assuming, however, that Suczek has produced a substantial improvement in the riding qualities of automobiles, by reducing swaying motion, his patent is invalid unless the means employed by him to obtain such improvement constitute invention.

Appellee insists, and the district court so held, that the claims in suit are invalid, because anticipated by U. S. Patent 1529182, issued March 10, 1925, to Alexander Albert Holle of London, England.

The invention of Holle specified improvement in motor road vehicles by the "construction of an undercarriage and running gear which will enable the vehicle to be driven at a high speed over any roads or ground however bad, or however undulating the character of the surface may be." He further specified the objects of his improvement to be the relief of the wheels of the motor vehicle from undue side stress and of tires from undue wear and tear, the relief of suspension springs of all duties other than suspension, the maintenance of a predetermined angle of castoring constant throughout the movement of wheels, the eradication of involuntary steering action on road wheels arising from the rise and fall of wheels when passing over irregularities in the road surface, and the avoidance of the use of telescopic elements.

It will be readily seen that the chief objects of Holle and Suczek were the same; and, as has been stated, appellant claims nothing novel in the patent in suit over the earlier patent of Holle except the means disclosed by Suczek of locating the fulcrum axis of the lever and the pivot axis of the

arm at acute angles to the longitudinal, vertical center plane of the vehicle.

The appellee insists that Holle, in the paragraph of his specifications about to be quoted, made the exact disclosure later claimed by Suczek. Holle said: "It will be obvious that the frame axles [which correspond to the transverse arms of Suczek's lever] may be arranged at any suitable or desired angle relative to the longitudinal center line of the. undercarriage other than at right angles as shown in the accompanying drawing."

■ In determining anticipation, a court is not limited to the precise scope of the claims of an earlier patent, but may consider, as well, the specifications and the drawings. Minerals Separation North American Corporation v. Magma Copper Company, 280 U.S. 400, 402, 50 S.Ct. 185, 74 L.Ed. 511. It is noteworthy that Suczek's specification as to lever arrangement is broadly similar to the specification of Holle just quoted. Suczek says: "Although I have illustrated only a few possibilities of arranging the suspension levers of the wheels in relation to the car body; it may be understood that many other arrangements * * * are possible, without departing from the spirit of my invention particularly as far as the frameless car design is concerned."

It is insisted by appellee that nothing more than the ordinary skill of a person practiced in the art would be required to foresee and employ, from the quoted Holle specification, the identical means revealed by Suczek for locating the axes at an angle. The insistence seems sound. Turning the frame axle to a suitable angle will move the axis of rotation of the frame axle and the link (which corresponds to the lateral arm of Suczek's wishbone) to an acute angle to the longitudinal center line of the car. Holle does not indicate that the position of the link should be changed, nor does he imply that moving the frame axle will necessitate an increase in its length. It may reasonably be assumed from his specification that these two factors remain constant. This being true, any shifting of the frame axle will cause the axis of rotation of Holle's wishbone to be located at an angle to the center line of the car.

It would seem obvious from the specifications of Holle that mere technical skill and not inventive genius would be required to locate the link or lateral arm of Holle's wishbone at any suitable angle to the center line of the car, thus achieving Suczek's identical arrangement. A diagram of a Holverta-Vulcan automobile, developed under Holle's English, French and United States patents, definitely shows the axis of rotation of the frame axle at an angle to the longitudinal center line of the car. (See Commercial Motor of October 12, 1926.)·

Figure 3 of the Holle drawings reveals an axis of rotation of the frame axle and the link at an angle to the center line of the car. Appellant urges that this fact should be disregarded, inasmuch as the axle is attached to the car-body by universal joints which permit the axle and its axis to shift within a certain latitude. It is argued that this precludes the possibility of the located axis claimed by Holle. The ready answer is that should these universal joints be replaced by hinge joints, the device would be operative and substantially identical with Suczek's claim. No inventive faculty being necessary to achieve this, Suczek was anticipated by Holle. See Pickering v. McCullough, 104 U.S. 310, 319, 26 L.Ed. 749; Walker on Patents, Deller's Ed., Vol. One, p. 274.

It would seem significant that in the original application for his patent filed by Suczek on July 16, 1932, no claim disclosed a fulcrum axis of the lever arms at an acute angle to the longitudinal center line of the automobile. This concept first appeared in an amended claim filed by Suczek on December 19, 1933; but the particular claim was rejected by the examiner as not involving invention in the light of the prior art. The first claims disclosing the angular axis of rotation which were allowed were not filed until March 9, 1934—after the appellee corporation had placed on the market a Buick automobile, utilizing such an angular axis. (See Automotive Industries of December 23, 1933, page 763.) All allowed Suczek claims disclosing the angular axis included, in terms, the entire independent wheel suspension with the angular axis of rotation as a part thereof; whereas, in the rejected Suczek claims, the angular fulcrum axis was separately claimed. From the foregoing file wrapper history, it is manifest that Suczek originally attached only minor importance to the arrangement finally revealed, which he now so heavily stresses. His lack of emphasis was doubtless due to a belief that only mechanical

skill and not inventive genius would be required to accomplish that which he now claims to be invention.

Appellant contends that, inasmuch as Figure 6 of his original drawings showed the wishbone so located that the fulcrum axis of the lever arms is at an acute angle to the longitudinal center line of the car, this inventive concept was revealed in his original application of July 16, 1932. But neither the specifications nor the original claims intimate that the arrangement was necessary or even advantageous. Indeed, the specifications strongly imply that exact placing is immaterial: "Due to the possibility of arranging the points of attachment * * * of a lever almost at any desirable place of the car body or frame, swaying and spring reactions as they occur in cars with conventional leaf spring suspension are greatly diminished or almost entirely eliminated and the riding comfort greatly improved." The original claims were restricted to straight line mechanism and did not disclose any set arrangement for the levers, but indicated that the levers might be arranged in any suitable fashion. The axis of rotation of the levers was not mentioned; nor was there any suggestion that the essence of the invention lay in a particular placing of the lever arms or wishbones.

■■ As was said by the Supreme Court in Permutit Co. v. Graver Corporation, 284 U.S. 52, 60, 52 S.Ct. 53, 55, 76 L.Ed. 163: "While drawings may be referred to for illustration and may be used as an aid in interpreting the specification or claim, they are of no avail where there is an entire absence of description of the alleged invention, or a failure to claim it." See General Motors Corporation v. Rubsam Corporation, 6 Cir., 65 F.2d 217, 222. The pertinent doctrine with respect to specifications and drawings has been well stated by Judge Hough in Fulton Co. v. Powers Regulator Co., 2 Cir., 263 F. 578, 580, 581: "A patentee may describe something that he does not claim or claim that which he has not described; his grant of privilege is construed to cover only that which is both described and claimed, no matter how broad the claim-language may be. * * * A patent (i. e., a claim) can never be given a construction broader than its terms in order to cover something which might have been claimed but was not. * * * The drawings may help out an ambiguous description, but never can they supply the entire absence of any written description of a feature of the invention. * * *"

■ The finding of the district court that the Suczek claims in suit are invalid, as anticipated by the Holle Patent, No. 1529182, is supported by substantial evidence.

The decree of the district court is affirmed.